## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

STEVENS TRUCKING CO. AND )
WESTERN FLYER EXPRESS LLC, )
)
    Plaintiffs, )
)
v. )    Case No. CIV-25-1031-SLP
)
J.B. HUNT TRANSPORT, INC., )
)
    Defendant. )

## **O R D E R**

Before the Court is Defendant J.B. Hunt Transport, Inc.'s Motion to Dismiss or, in the alternative, Transfer [Doc. No. 25]. Plaintiffs Stevens Trucking Co. and Western Express, LLC have responded, [Doc. No. 34], and Defendant has replied, [Doc. No. 35]. For the reasons discussed below, Defendant's Motion, [Doc. No. 25], is GRANTED in part and the Court transfers this case to the United States District Court for the Western District of Arkansas.

## I.    **Introduction**

On September 9, 2025, Plaintiff Stevens Trucking Co. filed its Original Complaint against Defendant J.B. Hunt Transport, Inc. alleging violations of (1) false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), (2) the Oklahoma Deceptive Trade Practices Act, OKLA. STAT. tit. 78, § 53, and (3) Oklahoma common law for Interference with Prospective Economic Advantage. *See* Compl. [Doc. No. 1]. On October 1, 2025, Defendant J.B. Hunt filed a Motion to Dismiss the Original Complaint. [Doc. No. 8]. Plaintiff Stevens Trucking then filed an Amended Complaint, [Doc. No. 11], adding

Western Flyer Express LLC as an additional Plaintiff and alleging the same violations as in the Original Complaint, [Doc. No. 1]. On October 23, 2025, the Court denied Defendant's Motion to Dismiss the Original Complaint as moot. [Doc. No. 12]. On the same day, the Court issued a Show Cause Order, [Doc. No. 13], as to why the Amended Complaint, [Doc. No. 11], should not be dismissed pursuant to Federal Rule of Civil Procedure 41(b). In response to the Show Cause Order, Plaintiffs, Stevens Trucking Co. and Western Flyer Express, LLC (collectively, the Plaintiffs), proposed a Second Amended Complaint which is now the operative complaint in this case.[1] *See* Resp. to Order to Show Cause [Doc. No. 18]; Second Am. Compl. [Doc. No. 20]. Like the Original Complaint and the Amended Complaint, the Second Amended Complaint alleges violations of (1) false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), (2) the Oklahoma Deceptive Trade Practices Act, OKLA. STAT. tit. 78, § 53, and (3) Oklahoma common law for Interference with Prospective Economic Advantage. *See* Second Am. Compl. [Doc. No. 11].

Defendant filed a Motion to Dismiss or, in the Alternative, Transfer and Brief in Support Thereof, [Doc. No. 25], arguing that the Court should dismiss all claims against Defendant or, in the alternative, transfer this case to the Western District of Arkansas. In support of its Motion, Defendant argues, in part, that prior agreements between J.B. Hunt

---

[1] Plaintiffs subsequently filed a Motion for Leave to Amend Plaintiff's Complaint, [Doc. No. 40], proposing a Third Amended Complaint. Since the Court transfers this case to the United States District Court for the Western District of Arkansas, the Court denies Plaintiffs' Motion, [Doc. No. 40], without prejudice.

and both Plaintiffs require this dispute to be resolved in arbitration.[2]  Def. Mot. [Doc. No. 25]; *see* Def. Mot. [Doc. Nos. 25-2, 25-3].  Plaintiffs Stevens Trucking Co. and Western Flyer Express LLC have each entered into individual Broker Carrier Agreements (collectively, the "Agreements") with Defendant and these agreements contain identical arbitration provisions. *See* [Doc. No. 25-2 at 14]; [Doc. No. 25-3 at 14].  In pertinent part, the Agreements provide as follows:

> 2. This Agreement (including the Parties' agreement to arbitrate disputes) will be subject to and is not exempt from the scope of the Federal Arbitration Act (9 U.S.C. § 1, et seq.).  If a court of competent jurisdiction issues a final ruling holding that this Agreement is exempt from mandatory arbitration under the Federal Arbitration Act, then this agreement to arbitrate will be governed by the Georgia Arbitration Code.  The arbitration will be held in Benton County, Arkansas and governed by the Commercial Arbitration Rules of the American Arbitration Association ("AAA") (adr.org), as then in effect, and the procedures set forth herein.

> 4. *Issues Delegated to Arbitrator.* An arbitrator will decide all issues arising from or relating to the interpretation or application of Section 51 (including its subsections), including the enforceability, revocability, or validity of Section 51 or any portion of it, except for the issue of the availability of class, collective, consolidated, or representative arbitration of claims, which issue will be reserved.

Broker Carrier Agreements, § 51.2, 51.4, [Doc. Nos. 25-2, 25-3] at 14.

## II.    <u>Legal Standard</u>

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–402, manifests Congress's intent to treat arbitration agreements as a matter of contract and require federal courts to enforce

---

[2] The Court notes that Defendant moved for dismissal or transfer of this action on additional grounds. Since the Court grants transfer of this action based on its inability to compel arbitration, the Court will not address Defendant's remaining arguments.

those agreements according to their terms.[3] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019) (citations omitted).  The Supreme Court has emphasized that the threshold question of arbitrability—"that is, whether [the] arbitration agreement applies to the particular dispute" at issue—"is itself a question of contract." *Id*. at 65.  When "the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.

When parties dispute an arbitration agreement's applicability, the party moving to compel arbitration bears a burden like the one faced by a summary judgment movant. Under this approach, the proponent of arbitration must make an initial showing of a valid arbitration agreement.  *BOSC, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017).  If the moving party satisfies this initial requirement, the burden shifts.  *Id.*  The non-moving party then must demonstrate a genuine issue of material fact whether the parties have formed an agreement to arbitrate.  *Id.*  The court takes "a quick look at the case" to determine whether "material disputes of fact exist" so that it "may decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration."  *Id.*

"[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."  *Henry Schein*, 586 U.S. at

---

[3] The parties do not dispute that the FAA applies to this case. *See also* Broker Carrier Agreements, § 51.2, [Doc. Nos. 25-2, 25-3] at 14 ("This Agreement (including the Parties' agreement to arbitrate disputes) will be subject to and is not exempt from the scope of the Federal Arbitration Act[.]")

69. Where there is 'clear and mistakable evidence' that parties agreed to arbitrate arbitrability, "a court possesses no power to decide the arbitrability issue" and the Court is "obliged to eschew consideration of the arbitrability of all claims[.]" *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 832 (10th Cir. 2023); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1293 (10th Cir. 2017).

III.   <u>Analysis</u>

A.    **The Arbitrator—and not the Court —decides issues of Arbitrability**

Here, no one disputes that the Agreements contain a valid arbitration provision requiring the parties to arbitrate, at the very least, some claims.  Instead, the parties disagree whether the Agreements' arbitration provision applies to the claims Plaintiff asserts in this action.  The Court must first determine *who* decides arbitrability, before it addresses the question whether a particular claim is arbitrable.  *Belnap*, 844 F.3d at 1280.  Where there is 'clear and mistakable evidence' that parties agreed to arbitrate arbitrability, "a court possesses no power to decide the arbitrability issue." *Brayman*, 83 F.4th at 832.

Defendant argues that the Agreements' delegation clauses are mandatory and require an arbitrator to decide any issues of arbitrability.  *See* Def. Mot. [Doc. No. 25] at 7; Def. Reply [Doc. No. 35] at 2-4.  The Court agrees with Defendant.  Section 51 of the Agreements, titled "Agreement to Arbitrate", contains provisions detailing the types of disputes, claims, or controversies that are and are not subject binding arbitration. *See* Broker Carrier Agreements, § 51, [Doc. Nos. 25-2, 25-3] at 14.  Critically, however, the Agreements each contain a delegation clause titled "*Issues Delegated to Arbitrator*" which states: "An arbitrator will decide *all issues arising from or relating to the interpretation of*

*Section 51 (including its subsections)*, including the enforceability, revocability, or validity of Section 51 or any portion of it[.]" *Id.* at § 51.4.  This plain, unambiguous language of the arbitration clauses within the Agreements provides "clear and unmistakable evidence" that the parties have delegated the issue of arbitrability to the arbitrator.  *Brayman*, 83 F.4th at 832; *see also Dustin Donley Constr. Servs., LLC v. Rosenthal*, No. CIV-22-1010-SLP, 2024 WL 3824791, at *6 (W.D. Okla. Aug. 14, 2024) (finding a delegation of arbitrability to an arbitrator based on the following language: "[a]ny action or dispute relating to this Agreement. . .*including, but not limited to issues of arbitrability*, will ... be determined by arbitration[.]") (emphasis in original).  Accordingly, the Court "possesses no power to decide the arbitrability issue" regarding the scope of the arbitration agreements.  *Brayman*, 83 F.4th at 832.

Plaintiffs state that the language of the Agreements' delegation provision concerning arbitrability is neither mandatory nor exclusive.  *See* Pl. Resp. [Doc. No. 34] at 24.  Plaintiff attempts to distinguish the delegation clause in this case from those in *Brayman* and *Rent-A-Center*.  *Brayman*, 83 F.4th 823; *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010).  In *Brayman*, the Tenth Circuit upheld a delegation clause relating to arbitrability, finding that its language was "essentially identical" to an arbitration clause in *Rent-A-Center*.  *Brayman*, 83 F.4th at 833.  Both the Tenth Circuit and the Supreme Court upheld delegation clauses which stated that the arbitrator "and not any federal, state, or local court or agency shall have the exclusive authority" to decide issues of arbitrability.  *See Brayman*, 83 F.4th 823, 833 (10th Cir. 2023) (noting similarities between the delegation provisions in the immediate case and *Rent-A-Center*.)

Plaintiff essentially makes a form-over-substance argument that the delegation provision cannot be upheld in this case because "the Agreement here contains none of [the] critical phrases [in *Brayman* and *Rent-A-Center*] and the differences in language matter." Pl. Resp. [Doc. No. 34] at 24.  Plaintiff takes issue that the delegation provision "does not say that [all issues] 'shall' or 'must' be decided by an arbitrator or contain any other mandatory language when referring to the issue of delegation." *Id*.  Plaintiff also argues that "the Agreement does not expressly remove the authority to determine the issue from any federal, state, or local court, or agency" and that the arbitrator does not have the "exclusive authority to determine arbitrability." *Id.* at 24-25.

As an initial matter, the Court finds that as a matter of contract interpretation, the use of the phrase "will" is mandatory in nature. *See  Griffin v. Howmedica Osteonics Corp.*, No. 25-CV-302-JFJ, 2025 WL 2807853, at *5 (N.D. Okla. Oct. 2, 2025) ("'Will' is mandatory in character and synonymous with 'shall' in this circumstance, meaning something that is required to take place as specified."); *Hot Shot Servs., Inc. v. Nanney*, No. 9-CV-629 WJ/LAM, 2010 WL 11493293, at *3 (D.N.M. Apr. 23, 2010) ("The word 'will', like the word 'shall', indicates a mandatory action."); *Summit Packaging Sys., Inc. v. Kenyon & Kenyon*, 273 F.3d 9, 12 (1st Cir. 2001) ("The parties' choice of the word "will"—a word "commonly having the mandatory sense of 'shall' or 'must,'" *Black's Law Dictionary* 1102 (6th ed.1991)—demonstrates [the parties'] exclusive commitment to the two named forums."); *see also Rosenthal*, No. CIV-22-1010-SLP, 2024 WL 3824791, at *6 (finding an arbitration clause containing the phrase "arbitrability *will* be. . .determined by arbitration" as a delegation of arbitrability to the arbitrator.) (emphasis added).

Further, courts in the Tenth Circuit have upheld other delegation clauses relating to arbitrability even without the "critical phrases" Plaintiff thinks are necessary for the delegation clause to be valid.[4] *See e.g. Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1283 (10th Cir. 2017) (upholding delegation clause which incorporated JAMS rules); *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1248 (10th Cir. 2018) ("incorporation of the AAA Rules [in an arbitration agreement] provides clear and unmistakable evidence that the parties intended to delegate matters of arbitrability to the arbitrator."); *Colombia v. Experian Info. Sols.*, No. 24-CV-02522-NYW-SBP, 2025 WL 2430015, at *12 (D. Colo. Aug. 22, 2025) (upholding a delegation clause with no express removal of authority to decide arbitrability from any courts or agencies.)

Therefore, since the issue of arbitrability is delegated to the arbitrator, the Court "possesses no power to decide the arbitrability issue" regarding the scope of the Agreements' arbitration provisions. *See Brayman*, 83 F.4th at 832.

---

[4] While the Court does not reach a ruling on the following grounds, it notes that the Agreements, in-part, incorporate the "Commercial Arbitration Rules of the American Arbitration Association (AAA), as then in effect." Broker Carrier Agreements, § 51.2, [Doc. Nos. 25-2, 25-3] at 14.  The Tenth Circuit has "repeatedly held that contracting parties' incorporation of the AAA Rules into their arbitration agreement constitutes 'clear and unmistakable evidence' of an agreement to arbitrate arbitrability." *Goldgroup Res., Inc. v. DynaResource de Mexico, S.A. de C.V.*, 994 F.3d 1181, 1191 (10th Cir. 2021) (citing *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1243 (10th Cir. 2018)); *see* AAA Commercial Arbitration Rules and Mediation Procedures, R-7(a) (Oct. 1, 2013) ("[T]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.")

**B.**    **The Court Transfers this Action to the United States District Court for the Western District of Arkansas**

Under the FAA, a party seeking to enforce a written arbitration agreement "may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.   After hearing the parties' arguments, "and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."   *Id.* Section 4 of the FAA directs courts "to decide quickly—summarily—the proper venue for the case. . .so the parties can get on with the merits of their dispute."   *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014).

The court has considered the parties' arguments here and determined that the parties agreed to have an arbitrator decide the issue of arbitrability.   But the Tenth Circuit has limited the court's authority to compel arbitration outside its district.   *See Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219–20 (10th Cir. 2005) (holding that where "parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under" the FAA.)

The Agreements in this case state that "[t]he arbitration will be held in Benton County, Arkansas[.]"   Broker Carrier Agreements, § 51.2, [Doc. Nos. 25-2, 25-3] at 14. Accordingly, this Court cannot compel arbitration since Benton County is outside the Western District of Oklahoma. But the court possesses authority under 28 U.S.C.

9

§ 1406(a), "in the interest of justice, [to] transfer such case to any district or division in which it could have been brought", to cure a defect in venue. *See Black & Veatch Constr., Inc. v. ABB Power Generation, Inc.*, 123 F. Supp. 2d 569, 580 (D. Kan. 2000) (citing § 1406(a) to enforce contractual provisions); *Finucane Enters., Inc. v. Arizant Healthcare, Inc.*, No. 05-CV-2163 JWL, 2005 WL 8160523, at *4 (D. Kan. Aug. 25, 2005) (finding that the "pivotal factor [for transfer of venue] in this case is the court's inability to compel arbitration outside the District of Kansas" and holding that "the interests of justice are best served by transferring this case to Minnesota.") Therefore, the Court transfers this action to the United States District Court for the Western District of Arkansas where the district court has the authority to compel arbitration and "further the parties' intent as expressed in their agreements." *Computerized Assessments & Learning, LLC v. Data Recognition Corp.*, No. CV 09-2400-KHV, 2010 WL 11561399, at *7 (D. Kan. Mar. 19, 2010).

## III.   Conclusion

IT IS THEREFORE ORDERED that Defendant J.B. Hunt Transport, Inc.'s Motion to Dismiss or, in the alternative, Transfer, [Doc. No. 25], is GRANTED in part.

IT IS FURTHER ORDERED that the Clerk of the Court take all necessary steps to transfer this action to the United States District Court for the Western District of Arkansas.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to Amend Plaintiffs' Complaint, [Doc. No. 40], is DENIED without prejudice.

IT IS SO ORDERED this 2nd day of July, 2026.


_____
**SCOTT L. PALK**
**CHIEF UNITED STATES DISTRICT JUDGE**

11